# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### EASTERN DIVISION
No. 4:14-CR-79-D

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| JORGE LUIS SELVAN-SELVAN, | ) |
| | ) |
| Defendant. | ) |

On February 9, 2015, Jorge Luis Selvan-Selvan ("Selvan-Selvan" or "defendant") pleaded guilty to one count of illegal reentry of a removed alien in violation of 8 U.S.C. § 1326 [D.E. 19]. On September 1, 2015, the court sentenced Selvan-Selvan to 37 months' imprisonment. At the sentencing hearing, defendant objected to the United States Probation Office's conclusion that 8 U.S.C. § 1326(b)(1), with a ten-year statutory maximum, applied to Selvan-Selvan, rather than the two-year statutory maximum under 8 U.S.C. § 1326(a). See PSR [D.E. 27] 1, 9, 12. The objection concerns whether Selvan-Selvan qualifies as an "alien . . . whose removal was subsequent to a conviction for commission of three or more misdemeanors involving . . . crimes against the person." 8 U.S.C. § 1326(b)(1). Selvan-Selvan also objected to a four-level enhancement under U.S.S.G. § 2L1.2(b)(1)(E). See PSR 9, 13–14. That objection concerns whether Selvan-Selvan had "three or more convictions for misdemeanors that are crimes of violence." U.S.S.G. § 2L1.2(b)(1)(E).

Before Selvan-Selvan's most recent removal from the United States, he sustained misdemeanor convictions in North Carolina for child abuse, simple assault, and assault on a female. PSR ¶¶ 14, 17, 18; cf. Indictment [D.E. 14] 2 (identifying three qualifying misdemeanor convictions under section 1326(b)(1) as child abuse on December 12, 2011, simple assault on November 22,

2013, and assault on a female on November 22, 2013). As announced in open court, the court concludes that the three misdemeanor convictions identified in the indictment qualify as "misdemeanors involving . . . crimes against the person" under 8 U.S.C. § 1326(b)(1), but do not qualify as "crimes of violence" under U.S.S.G. § 2L1.2(b)(1)(E). Accordingly, the court overrules Selvan-Selvan's objection concerning the statutory maximum under 8 U.S.C. § 1326, but sustains Selvan-Selvan's objection concerning a four-level enhancement under U.S.S.G. § 2L1.2(b)(1)(E). The court incorporates the statements it made in open court on September 1, 2015, and further explains its reasoning in this order.

I.

In 1994, Congress imposed an increased statutory maximum of ten years on "any alien . . . whose removal was subsequent to a conviction for commissions of three or more misdemeanors involving . . . crimes against the person." Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322, 108 Stat. 1796, 2023 (codified as amended at 8 U.S.C. § 1326(b)); cf. 8 U.S.C. § 1326(b)(1). Congress did not define "crimes against the person," and the parties dispute what it means.

"In interpreting a statute, 'a court should always turn first to one, cardinal canon [of construction] before all others': the plain meaning rule." Ayes v. U.S. Dep't of Veterans Affairs, 473 F.3d 104, 108 (4th Cir. 2006) (quoting Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253 (1992)). In applying the plain meaning rule, courts must "consider the context in which the statutory words are used because [courts] do not construe statutory phrases in isolation; we read statutes as a whole." Id. (quotation and alteration omitted). However, "[t]he [construction] inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent." Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002) (quotation omitted); see Ayes, 473 F.3d at 108.

2

Absent a statutory definition, the term "crimes against the person" is presumed to have its common-law meaning. See, e.g., United States v. Castleman, 134 S. Ct. 1405, 1410 (2014); Taylor v. United States, 495 U.S. 575, 592–93 (1990); Morissette v. United States, 342 U.S. 246, 263 (1952); United States v. Trejo-Galvan, 304 F.3d 406, 406–07, 407 n.1 (5th Cir. 2002). When Congress amended section 1326(b) in 1994, the then-current edition of Black's Law Dictionary did not define "crimes against the person." See Crime, Black's Law Dictionary (6th ed. 1990). The Sixth Edition of Black's Law Dictionary noted, however, under the definition of "offense," that "[c]riminal offenses may be classified into general categories as felonies and misdemeanors and as offenses against the person (e.g. murder, manslaughter), against habitation and occupancy (e.g. burglary, arson), against property (e.g. larceny), against morality and decency (e.g. adultery), against public peace, against government (e.g. treason)." See Offense, Black's Law Dictionary (6th ed. 1990). In 1999, Black's Law Dictionary defined "crimes against persons" as "[a] category of criminal offenses in which the perpetrator uses or threatens to use force" and included a list of nonexhaustive examples of "murder, rape, aggravated assault, and robbery." Crimes Against Persons, Black's Law Dictionary (7th ed. 1999). The 1999 definition of "crimes against persons" also cross-references to the term "offense against the person," which is defined as "[a] crime against the body of another human being" and notes that "[t]he common-law offenses against the person were murder, manslaughter, mayhem, rape, assault, battery, robbery, false imprisonment, abortion, seduction, kidnapping, and abduction." Offense Against the Person, Black's Law Dictionary (7th ed. 1999); see also 4 William Blackstone, Commentaries on the Laws of England 205–19 (1st American ed. 1772) (reprint 1992) (listing "offenses against the persons of individuals" as murder, mayhem, forcible abduction and marriage, rape, sodomy, assault, battery, wounding, false imprisonment, and kidnapping).

3

The parties dispute whether, in 1994, Congress intended the phrase "crimes against the person" in 8 U.S.C. § 1326(b)(1) to include child abuse, simple assault, and assault on a female. Cf. United States v. Miranda-Garcia, 427 F. App'x 296, 297–98 (5th Cir. 2011) (per curiam) (unpublished) (holding that assaulting a police office qualifies as a "crime against the person" under 8 U.S.C. § 1326(b)(1)); Trejo-Galvan, 304 F.3d at 408 (listing as examples of "crimes against the person" murder, mayhem, rape, sodomy, assault, battery, wounding, false imprisonment, and kidnapping, but holding that driving under the influence is not a "crime against the person" under 8 U.S.C. § 1326(b)(1)); see also United States v. Cox, 934 F.2d 1114, 1124 (10th Cir. 1991) ("Menacing is a crime against the person."); Kenny v. Se. Pa. Transp. Auth., 581 F.2d 351, 355 (3d Cir. 1978) (crimes against the person include robbery, assault, and rape); Doe v. Montgomery Mall Ltd. P'ship, 962 F. Supp. 58, 60 (D. Md. 1997) ("Some of the crimes listed are crimes against the person such as simple assault . . . ."); Courtney v. Remler, 566 F. Supp. 1225, 1227 (D.S.C. 1983) (assault is a crime against the person); United States v. Goins, 39 C.M.R. 822, 823 (1968) ("[A]ssault[] is a crime against the person."). Specifically, the parties dispute whether Selvan-Selvan's three misdemeanor convictions for child abuse, simple assault, and assault on a female are "crimes against the person," and therefore subject him to the ten-year statutory maximum under 8 U.S.C. § 1326(b)(1). See PSR ¶¶ 14, 17, 18.[1]

---

[1] That two of Selvan-Selvan's convictions, see PSR ¶¶ 17, 18, were "predicated on an Alford plea is of no consequence." United States v. Covington, 583 F. App'x 263, 264 (4th Cir. 2014) (per curiam) (unpublished) (footnote omitted); United States v. Mouzone, 687 F.3d 207, 221 (4th Cir. 2012); United States v. King, 673 F.3d 274, 280–83 (4th Cir. 2012). Although Selvan-Selvan cites United States v. Davis, 679 F.3d 177 (4th Cir. 2012), and argues that the court cannot rely on the two convictions arising from Alford pleas in analyzing 8 U.S.C. § 1326(b)(1), Davis involved whether the district court had sufficient evidence to support a cross-reference to the robbery guideline in connection with Davis's conviction for possession of ammunition by a felon. See Davis, 679 F.3d at 179–80. Selvan-Selvan's case does not involve whether sufficient evidence exists to support a finding of fact necessary for a cross-reference under the Guidelines. Thus, Davis does not help Selvan-Selvan.

4

In determining whether a past conviction qualifies for a statutory enhancement based on a "generic" crime, courts generally apply the categorical approach. See Castleman, 134 S. Ct. at 1413; Descamps v. United States, 133 S. Ct. 2276, 2281 (2012). Under the categorical approach, courts "look[] only to the fact of conviction and the statutory definition of the prior offense." United States v. Montes-Flores, 736 F.3d 357, 364 (4th Cir. 2013) (quotation omitted); see, e.g., Castleman, 134 S. Ct. at 1413–14; Taylor, 495 U.S. at 599–602; United States v. Gomez, 690 F.3d 194, 197–98 (4th Cir. 2012); United States v. Baxter, 642 F.3d 475, 476 (4th Cir. 2011). When "a prior conviction is for violating a so-called 'divisible statute,'" "[t]hat kind of statute [that] sets out one or more elements of the offense in the alternative," courts apply the modified categorical approach to determine which set of alternative elements covered the defendant's prior conviction. Descamps, 133 S. Ct. at 2281, 2284–85; see, e.g., Castleman, 134 S. Ct. at 1414; United States v. Vinson, No. 14-4078, 2015 WL 4430889, at *9 n.12 (4th Cir. July 21, 2015); Montes-Flores, 736 F.3d at 364–65; United States v. Cabrera-Umanzor, 728 F.3d 347, 352 (4th Cir. 2013). Under the modified categorical approach, the court may examine "charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms" to determine "which statutory phrase was the basis for the conviction." Johnson v. United States ("Johnson I"), 559 U.S. 133, 144 (2010); see Castleman, 134 S. Ct. at 1413–15; Shepard v. United States, 544 U.S. 13, 26 (2005); Montes-Flores, 736 F.3d at 365; United States v. Hamilton, 480 F. App'x 217, 219 (4th Cir. 2012) (per curiam) (unpublished). "This examination . . . is for the sole purpose of determining which part of the statute the defendant violated." Gomez, 690 F.3d at 198.

Selvan-Selvan's relevant misdemeanor convictions are for child abuse, simple assault, and assault on a female. PSR ¶¶ 14, 17, 18. Although North Carolina provides criminal penalties by

5

statute, see N.C. Gen. Stat. § 14-33, the elements of assault are defined by common law.[2] A criminal assault in North Carolina is "an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm." State v. Roberts, 270 N.C. 655, 658, 155 S.E.2d 303, 305 (1967) (quotation omitted); see State v. Britt, 270 N.C. 416, 418, 154 S.E.2d 519, 521 (1967) ("A battery always includes an assault, and is an assault whereby any force is applied, directly or indirectly, to the person of another." (emphasis added)).

The Fourth Circuit has interpreted North Carolina law to provide three ways to complete an assault: (1) an attempted battery, (2) a show of violence, or (3) a completed battery. Vinson, 2015 WL 4430889, at *4. In Vinson, the Fourth Circuit held that the North Carolina crime of assault is divisible and therefore subject to the modified categorical approach. Id. at *4–5. Under the modified categorical approach, Selvan-Selvan's convictions for simple assault and assault on a female each qualify as "crimes against the person" because each type of assault under North Carolina law involves the use or threatened use of force against another person. See Crimes Against Persons, Black's Law Dictionary (7th ed. 1999); Offense Against the Person, Black's Law Dictionary (7th ed. 1999); [D.E. 32-2, 32-3] (Shepard documents concerning Selvan-Selvan's assault and assault on a female convictions); cf. Vinson, 2015 WL 4430889, at *8–9 (relying on a magistrate's order to determine under which prong the defendant was convicted); Prudencio v. Holder, 669 F.3d 472,

---

[2] Assault on a female adds some additional elements—that the victim be female and the aggressor be a male at least 18 years old—and an increased misdemeanor class. Nonetheless, the offense's core element remains "an assault." See, e.g., N.C. Gen. Stat. § 14-33(c)(2); Vinson, 2015 WL 4430889, at *3–4; State v. Herring, 322 N.C. 733, 743, 370 S.E.2d 363, 370 (1988); State v. Wortham, 318 N.C. 669, 671, 351 S.E.2d 294, 296 (1987); State v. Garrison, 225 N.C. App. 170, 736 S.E.2d 610, 613 (2013).

485–86 (4th Cir. 2012) (considering, under the modified categorical approach, an arrest warrant as part of the record of conviction); United States v. Washington, 629 F.3d 403, 410 (4th Cir. 2011) (applying a preponderance-of-the-evidence standard in modified categorical cases to the district court's evaluation of Shepard documents).

As for child abuse, under North Carolina law there are "three separate offenses: If the parent by other than accidental means (1) inflicts physical injury upon the child, (2) allows physical injury to be inflicted upon the child, or (3) creates or allows to be created a substantial risk of physical injury." State v. Fredell, 283 N.C. 242, 244, 195 S.E.2d 300, 302 (1973); see N.C. Gen. Stat. § 14-318.2(a); State v. Mapp, 45 N.C. App. 574, 581–82, 264 S.E.2d 348, 354 (1980). Because the statute is divisible and the first prong (the parent inflicts physical injury upon the child) qualifies as a crime against the person, the court applies the modified categorical approach to determine which prong of the child-abuse statute covered Selvan-Selvan's conviction. See, e.g., Castleman, 134 S. Ct. at 1413–15; Vinson, 2015 WL 4430889, at *5; Montes-Flores, 736 F.3d at 364–65. Here, the Shepard-approved documents demonstrate that the first prong, or infliction of physical injury upon a child, provided the basis for Selvan-Selvan's conviction for misdemeanor child abuse. See [D.E. 32-1] 1–4; Washington, 629 F.3d at 410. Thus, Selvan-Selvan's conviction for child abuse qualifies as a crime against the person.

In opposition to the conclusion that he has three misdemeanor convictions involving crimes against the person, Selvan-Selvan makes two arguments. First, relying on Johnson v. United States ("Johnson II"), 135 S. Ct. 2551 (2015), he argues that "crimes against the person" is unconstitutionally vague. In Johnson II, the Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA"), which included within the meaning of "violent felony" any felony that "involve[d] conduct that presents a serious potential risk of physical injury to another,"

7

18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague. Johnson II, 135 S. Ct. at 2557. Selvan-Selvan argues that Johnson II precludes the use of a "risk analysis" to determine, as the Fifth Circuit did in Trejo-Galvan, whether an offense is "likely to involve the intentional use or threat of physical force against another person." Trejo-Galvan, 304 F.3d at 410 (emphasis added); see Def.'s Sentencing Mem. [D.E. 31] 2.

This argument fails for at least three reasons. First, the court is not adopting a risk analysis to determine whether a misdemeanor conviction involves a "crime against the person." Rather, it simply analyzes whether, under the categorical or (when applicable) modified categorical approach, the misdemeanor offense of conviction involves a perpetrator's use or threatened use of force.

Second, the Johnson II Court discussed at length and relied upon the difficulty that a court faced in determining whether, under the ACCA's residual clause, an offense likely presented a serious risk of physical injury to someone else. See, e.g., Johnson II, 135 S. Ct. at 2558 (discussing the difficulty in knowing whether attempted burglary would likely present a serious risk of physical injury to a homeowner). Furthermore, the Johnson II Court specifically noted the difficulty that courts confronted in crafting an adequate standard under the ACCA's residual clause. Johnson II, 135 S. Ct. at 2558 ("Here, this Court's repeated attempts and repeated failures to craft a principled and objective standard out of the residual clause confirm its hopeless indeterminacy."). In stark contrast to Johnson II, Selvan-Selvan cites no cases suggesting that a similar problem exists in determining whether a misdemeanor conviction involved a "crime against the person." Cf. 8 U.S.C. § 1326(b)(1); United States v. Jaramillo-Jimenez, 510 F. App'x 303, 303–04 (4th Cir. 2013) (per curiam) (unpublished) (affirming unlawful reentry conviction where defendant had three misdemeanor offenses involving crimes against the person). Third, the Johnson II Court explicitly stated that its holding striking the residual clause "does not call into question application of the

8

[ACCA] to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." Johnson II, 135 S. Ct. at 2563. The court rejects Selvan-Selvan's argument for extending Johnson II to the phrase "crimes against the person" in 8 U.S.C. § 1326(b)(1) given that the Supreme Court cabined its holding to the residual clause in the ACCA.

Next, Selvan-Selvan focuses on how to interpret "crimes against the person." Selvan-Selvan notes that in section 2L1.2(b)(1)(E) of the Sentencing Guidelines, the United States Sentencing Commission ("Commission") provided for an increase of four offense levels if "the defendant previously was deported . . . after . . . three or more convictions for misdemeanors that are crimes of violence." See U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(E) (U.S. Sentencing Comm'n 2014) (emphasis added). The application notes to section 2L1.2 state that a "crime of violence" for the 16-level or 12-level enhancement in section 2L1.2(b)(1)(A) or for the 4-level enhancement in section 2L1.2(b)(1)(E) includes any offense "that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S. Sentencing Guidelines Manual § 2L1.2 cmt. n.1(B)(iii) (U.S. Sentencing Comm'n 2014). The Fourth Circuit has interpreted "crime of violence" under the section 2L1.2(b)(1)(A) enhancement to require "violent force." Aparicio-Soria, 740 F.3d at 153–55. Violent force is "force capable of causing physical pain or injury to another person," and it "specifically excludes from consideration 'the slightest offensive touching.'" Id. at 154–55 (quotation omitted); see Johnson I, 559 U.S. at 140–42. Selvan-Selvan argues that the court should interpret the phrase "crimes against the person" in section 1326(b)(1) to mean "crime of violence" in light of section 2L1.2(b)(1)(E)'s reference to "crimes of violence." Accordingly, Selvan-Selvan contends that because, under North Carolina law, child abuse, simple assault, and assault on a female are not "crimes of violence," these three convictions do not count as "crimes against the person" and the applicable statutory maximum is two years.

9

The court rejects Selvan-Selvan's argument as contrary to the plain language of section 1326(b)(1). Tellingly, Congress amended the ACCA in 1986 to include the term "violent felony" and could have included that phrase in its 1994 amendment of section 1326(b)(1), but chose not to. See Career Criminals Amendment Act of 1986, Pub. L. 99-570, 100 Stat. 3207, 3239–40 (codified at 18 U.S.C. § 924(e)(1)). This court will not equate the two sections when Congress distinguished them. Rather, the court interprets "crimes against the person" in section 1326(b)(1) to mean crimes that have as an element the use or threatened use of force, within its common-law meaning. See Castleman, 134 S. Ct. at 1410 (holding that, in the absence of indication otherwise, "Congress incorporated the common-law meaning of 'force'—namely, offensive touching" in its definition of misdemeanor crime of domestic violence").

At its core, Selvan-Selvan argues that, in promulgating section 2L1.2(b)(1)(E), the Commission was interpreting section 1326(b)(1)'s statutory phrase "crimes against the person," rather than promulgating guidelines to create "more uniformity in sentences of similarly situated offenders." United States v. Pauley, 511 F.3d 468, 471 (4th Cir. 2007); see Peugh v. United States, 133 S. Ct. 2072, 2079 (2013). Selvan-Selvan's proposed statutory construction of the phrase "crimes against the person" to mean "crimes of violence" relies upon a Guideline gloss that unreasonably rips the phrase "misdemeanors involving . . . crimes against the person" from its statutory mooring. Notably, after Congress amended section 1326(b) in 1994 to include a ten-year statutory maximum for an alien with three prior misdemeanor convictions involving "crimes against the person," the Commission changed the 1997 Sentencing Guidelines Manual. The Commission chose to add a four-level enhancement (in what would become section 2L1.2(b)(1)(E)) for an alien whose removal was subsequent to three or more convictions for misdemeanor crimes of violence. See U.S. Sentencing Guidelines Manual app. C, amend. 562 (U.S. Sentencing Comm'n 1997) ("This

10

amendment enhances penalties for those who unlawfully enter or remain in the United States following conviction for . . . three misdemeanor crimes of violence . . . ."). In promulgating the new four-level enhancement under section 2L1.2(b)(1)(E), however, the Commission was not construing the phrase "crimes against the person" in 8 U.S.C. § 1326(b). Indeed, this court questions whether the Commission would have the power to construe, in any binding fashion, that the phrase "crimes against the person" in 8 U.S.C. § 1326(b)(1) means "crime of violence." See United States v. LaBonte, 520 U.S. 751, 753–55, 762 (1997) (rejecting the Commission's promulgation of a Guidelines provision as "inconsistent with [the statute's] plain language"); cf. Mistretta v. United States, 488 U.S. 361, 374–75, 396 (1989) ("Congress instructed the Commission that these sentencing ranges must be consistent with pertinent provisions of Title 18 of the United States Code . . . ."); United States v. Kinder, 64 F.3d 757, 760 (2d Cir. 1995) ("[T]he Sentencing Commission has no power to change a prior judicial interpretation of [a] statutory term . . . .").[3] Rather, in promulgating section 2L1.2(b)(1)(E), the Commission was following its traditional role of seeking to have an offense level increase for more serious conduct. See, e.g., Gall v. United States, 552 U.S. 38, 54 (2007) ("As with the seriousness of the offense conduct, avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges."); Pauley, 511 F.3d at 471. One such example would be an offender who returned to the United States after sustaining three misdemeanor convictions for "crimes of violence." See U.S.S.G. § 2L1.2(b)(1)(E). Another example would be an offender who returned to the United States after sustaining a felony conviction for a crime of violence. See U.S.S.G. § 2L1.2(b)(1)(A). Accordingly, section

---

[3] For example, were the Commission to promulgate a provision of the Guidelines stating that general deterrence was no longer a proper sentencing factor under 18 U.S.C. § 3553(a)(2)(B), such a statement would not be binding on the court's consideration of the relevant factors under 18 U.S.C. § 3553(a). See LaBonte, 520 U.S. at 757 ("Broad as [the Commission's] discretion may be, . . . it must bow to the specific directives of Congress.").

Case 4:14-cr-00079-D   Document 39   Filed 09/04/15   Page 11 of 15

2L1.2(b)(1)(E) does not define what Congress meant when it used "crimes against the person" in the 8 U.S.C. § 1326(b)(1).

In sum, Selvan-Selvan's three convictions in paragraphs 14, 17, and 18 of the PSR qualify as prior misdemeanor convictions involving crimes against the person. Accordingly, he is subject to the ten-year statutory maximum, and his objection is overruled.

## II.

Next, the court addresses Selvan-Selvan's second objection. Section 2L1.2(b)(1)(E) imposes a four-level enhancement for a defendant who "previously was deported, or unlawfully remained in the United States, after . . . three or more convictions for misdemeanors that are crimes of violence." U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(E) (U.S. Sentencing Comm'n 2014). Under binding Fourth Circuit precedent, a crime of violence, for purposes of section 2L1.2(b)(1)(A), requires violent force, or "force capable of causing physical pain or injury to another person." Aparicio-Soria, 740 F.3d at 154–55 (quotation omitted). This definition of violent force "specifically excludes from consideration 'the slightest offensive touching.'" Id. (quotation omitted).[4]

The three means of accomplishing a criminal assault under North Carolina law are (1) an attempted battery, (2) a show of violence, or (3) a completed battery. Vinson, 2015 WL 4430889,

---

[4] In Johnson I, the Supreme Court discussed in great detail the distinction between the physical force needed for a "violent felony" vis-a-vis a "common-law misdemeanor." Johnson I, 559 U.S. at 140–42. The Johnson I Court noted that the "specialized meaning that ['force'] bore in the common-law definition of battery" consisted of "the intentional application of unlawful force against the person of another," including "the slightest offensive touching." Id. at 139. The Court rejected this application within the confines of the ACCA because of "the statutory category of 'violent felonies'" and held that the ACCA required "violent force." Id. at 140 (alteration omitted). The Fourth Circuit then adopted the Johnson I Court's force threshold for purposes of section 2L1.2(b)(1)(A) because "the language of the force clause in the [ACCA] and the reentry Guideline is identical." Aparicio-Soria, 740 F.3d at 154.

at *4. Under North Carolina law, battery is "an assault whereby any force, however slight is actually applied to the person of another directly or indirectly." State v. Sudderth, 184 N.C. 753, 114 S.E. 828, 829 (1922) (emphasis added, quotation omitted); see State v. Hefner, 199 N.C. 778, 155 S.E. 879, 881 (1930) ("[A] battery, which is the unlawful application of force to the person of another by the aggressor himself . . . ."); State v. Thompson, 27 N.C. App. 576, 577–78, 219 S.E.2d 566, 568 (1975) (same). Accordingly, a battery, whether completed or attempted, is not a "crime of violence" because it may be accomplished without the use of violent force. Lastly, an assault by a show of violence, likewise does not require the use of violent force. Thus, the court concludes that Selvan-Selvan's misdemeanor convictions for simple assault and assault on a female are not crimes of violence. See Vinson, 2015 WL 4430889, at *4 (explaining elements of the three means of accomplishing assault); Aparicio-Soria, 740 F.3d at 154. In light of that conclusion, the court need not analyze whether the child abuse conviction qualifies as a "crime of violence," and the court sustains Selvan-Selvan's objection to the four-level enhancement under section 2L1.2(b)(1)(E).

In opposition to this conclusion, the government argues that the force threshold under section 2L1.2(b)(1)(E) is "lower than what is necessary for a felony 'crime of violence.'" Gov't's Sentencing Mem. [D.E. 32] 9. The government attempts to distinguish Aparicio-Soria by arguing that the Fourth Circuit in Aparicio-Soria recognized that the Johnson I Court's discussion centered on "a definition of the term 'violent felony,'" whereas section 2L1.2(b)(1)(E) deals with misdemeanor crimes of violence. Aparicio-Soria, 740 F.3d at 155; Gov't's Sentencing Mem. [D.E. 32] 12–13.

The court rejects the government's argument. In Aparicio-Soria, the Fourth Circuit explicitly applied the "violent force" requirement to the Commission's definition of "crime of violence" that covers both a felony crime of violence under section 2L1.2(b)(1)(A) and a

13

misdemeanor crime of violence under section 2L1.2(b)(1)(E). See Aparicio-Soria, 740 F.3d at 154 ("[W]e nevertheless consider [Johnson I's] interpretation controlling in this case because the language of the force clause in the Armed Career Criminal Act and the reentry Guideline is identical, and we have previously relied on case law construing one provision as helpful in construing the other."); compare 18 U.S.C. § 924(e)(2)(B)(i) (defining a violent felony as a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another"), with U.S. Sentencing Guidelines Manual § 2L1.2 cmt. n.1(B)(iii) (U.S. Sentencing Comm'n 2014) (defining, "[f]or purposes of subsection (b)(1)," a crime of violence as, among other offenses, "any other offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another"). Although the Fourth Circuit in Aparicio-Soria was analyzing the meaning of "crime of violence" under section 2L1.2(b)(1)(A)'s use of the term "felony . . . crime of violence," the Fourth Circuit did not limit its interpretation to that subsection. See Aparicio-Soria, 740 F.3d at 153; see also Md. Code, Crim. Law § 9-408 (defining a statutory maximum of three years for resisting arrest). Accordingly, this court concludes Aparicio-Soria's invocation of the violent force requirement applies under section 2L1.2(b)(1)(A) and (E), and Selvan-Selvan does not have three misdemeanor convictions that meet the violent force threshold under section 2L1.2(b)(1)(E). Thus, the four-level enhancement under section 2L1.2(b)(1)(E) does not apply, and the court sustains Selvan-Selvan's second objection.

## III.

In sum, the court imposed Selvan-Selvan's sentence for the reasons discussed herein and the reasons discussed in open court on September 1, 2015, which are incorporated by reference. This order is intended to provide (in part) a statement of reasons for Selvan-Selvan's sentence, and does not alter or amend the court's judgment announced in open court.

14

SO ORDERED. This 4 day of September 2015.

JAMES C. DEVER III
Chief United States District Judge

15